# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| For Prothonotary Use Only (Docket Number) |
|---|
| **JUNE 2025**      **01472** |
| E-Filing Number: 2506028540 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| JEFFREY FLESNER | AMERICAN CONTRACT SYSTEMS |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1524 PINECREST ROAD<br>FORT MYERS  FL 33919 | 11600 ADELMO LANE<br>FORT MYERS  FL 33916 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| MONICA FLESNER | JOHN DOE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1524 PINECREST ROAD<br>FORT MYERS  FL 33919 | 11600 ADELMO LANE<br>FORT MYERS  FL 33916 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| ELAINE MCCOY | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3213 S SR 53<br>TIFFIN OH 44883 | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 12 | 2 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☐ Other: | ☒ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE**

T1 - MASS TORT - ASBESTOS

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO<br>COORDINATION ORDER? |
|---|---|---|
| | **FILED**<br>**PRO PROTHY**<br>JUN **12** 2025<br>**B. BALILONIS** | YES          NO |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>JEFFREY FLESNER , MONICA FLESNER ,</u>
<u>ELAINE MCCOY , SARAH RUMBAUGH , GAE</u>
Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| EDWARD J. CIARIMBOLI | FELLERMAN&CIARIMBOLI LAW<br>183 MARKET ST STE 200<br>KINGSTON PA 18704 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (570)718-1444 | (570)714-7255 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 85904 | ejc@fclawpc.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *EDWARD CIARIMBOLI* | Thursday, June 12, 2025, 02:54 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF PLAINTIFFS:**

1. JEFFREY FLESNER
    1524 PINECREST ROAD
    FORT MYERS  FL 33919
2. MONICA FLESNER
    1524 PINECREST ROAD
    FORT MYERS  FL 33919
3. ELAINE MCCOY
    3213 S SR 53
    TIFFIN OH 44883
4. SARAH RUMBAUGH
    228 KAUFMAN ROAD
    EVANS CITY PA 16033
5. GAEANN WEVER
    1650 LONG MEADOW RD
    FORT MYERS  FL 33919
6. JOVASIA SPIKES
    1629 PAWNEE ST
    FORT MYERS  FL 33916
7. GLORIA TUIN
    8006 HIDDEN RIVER DR. APT A
    TAMPA FL 33617
8. KARRI SUE MEACHUM
    377 BENNER ST
    TIFFIN OH 44883
9. RHONDA JOHNSON
    9063 LENHAM DRIVE
    JOHNSTOWN IA 50131
10. NANCY UHL
    10140 MEREDITH DRIVE
    URBANDALE IA 50322
11. DARCI PLUMB
    4824 84TH STREET
    URBANDALE IA 50322
12. VIRGINIA JACKSON
    11826 LONGWOOD GARDENWAY
    HOUSTON TX 77047

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

**COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**

**CIVIL ACTION**

---------------------------------------------------------------------X

**JEFFREY ROBERT FLESNER;MONICA FLESNER;GAEANN WEVER;ELAINE MCCOY;KARRI SUE MEACHUM; RHONDA JOHNSON;NANCY UHL;DARCI PLUMB;VIRGINIA JACKSON; SARAH RUMBAUGH;JOVASIA SIERRA SPIKES; GLORIA TUIN,** individually

*Plaintiffs*,

-*against* -

**AMERICAN CONTRACT SYSTEMS**
11600 Adelmo Lane Fort Myers, FL; 7802 E Telecom Parkway, Temple Terrace, Florida 33637; 85 Shaffer Park Drive Tiffin, Ohio; 1601 SE Gateway Drive, Suite 120 Grimes, Iowa; 7702 Parnell St Houston, Texas; 4040 Jackson Pointe Court, Building 4000 Zelienople, Pennsylvania
And

**JOHN DOE,**
**A fictitious designation pursuant to Pa. R. Civ. P. 2005 for any company, entity, corporation, LLC, fictitious name, or person whose name, identity and/or actions) are presently unknown to plaintiff but whose wrongful, reckless, and/or negligent misconduct, related to emissions of ethylene oxide from the following AMERICAN CONTRACT SYSTEMS facilities: 11600 Adelmo Lane Fort Myers, FL; 7802 E Telecom Parkway, Temple Terrace, Florida 33637; 85 Shaffer Park Drive Tiffin, Ohio; 1601 SE Gateway Drive, Suite 120 Grimes, Iowa; 7702 Parnell St Houston, Texas; 4040 Jackson Pointe Court, Building 4000 Zelienople, Pennsylvania caused harm, injuries, and/or damages to the plaintiff in this action.**

*Defendants*.

---------------------------------------------------------------------X

Case No: _____

**JURY TRIAL DEMANDED**

**NOTICE TO PLEAD AND COMPLAINT**

**CIVIL ACTION-COMPLAINT-NOTICE TO PLEAD**

Filed and Attested by the Office of Judicial Records 01 JUL 2025 02:54 pm B. BALILONIS

NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

You should take this paper to your lawyer at once. If you do not have a lawyer, go to or telephone the office set forth below to find out where you can get legal help.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

## **COMPLAINT**

NOW COMES Plaintiff, JEFFREY ROBERT FLESNER, MONICA FLESNER, GAEANN WEVER, ELAINE MCCOY, KARRI SUE MEACHUM, RHONDA JOHNSON, NANCY UHL, DARCI PLUMB, VIRGINIA JACKSON, SARAH RUMBAUGH, JOVASIA SIERRA SPIKES, and GLORIA TUIN individually ("Plaintiffs") by and through undersigned counsel, to hereby complaint against Defendants, AMERICAN CONTRACT SYSTEMS , and JOHN DOE ("Defendants") avers as follows:

### **NATURE OF THE ACTION**

1.      Ethylene Oxide ("EtO"), a globally recognized human carcinogen for decades, has been silently permeating in the air of certain American communities, primarily being emitted from medical sterilization sites, food manufacturers, and chemical plants. This insidious chemical, officially deemed cancer-causing by authorities like the Environmental Protection Agency ("EPA"), National Toxicology Program, and the International Association of Research on Cancer,

Case ID: 250601472

is alarmingly prevalent in the air where the toxin is continuously released from sterilization facilities and impacts the surrounding population.

2.      The health implications of continuous EtO exposure are extensive, encompassing a range of cancers—including breast, blood, stomach, leukemia, lymphoma, pancreatic, and brain, as well as reproductive problems and miscarriages. For children, EtO exposure increases the risk of severe DNA mutations. Even short-term exposure to this toxin can initiate a variety of symptoms like respiratory issues, nausea, headaches, fatigue, and neurological disorders. Plaintiff seeks compensation for personal injuries from exposure to EtO. The Facility is owned by the Defendant where Defendant currently operates and does business. Upon information and belief, the Facility was previously owned and/or operated by the Defendants. Collectively these entities are referred to as the "Defendants."

3.      This lawsuit is a direct response to the harm and suffering endured by the plaintiff, traced back to the negligent handling of EtO at the Facility. Through their reckless practices and by acting in concert, Defendants have unleashed a deadly and ever-present series of plumes of EtO across plaintiff's community poisoning the air and causing marginalized areas to suffer disproportionately from environmental contamination.

## <u>INTRODUCTION</u>

4.      EtO was first listed in the National Toxicology Program, Department of Health, and Human Services 's *Fourth Annual Report on Carcinogens* in 1985 as reasonably anticipated to be a human carcinogen based on limited evidence of carcinogenicity from studies in humans

Case ID: 250601472

and sufficient evidence of carcinogenicity from studies in experimental animals. The listing was revised to "*known to be a human carcinogen*" in the *Ninth Report on Carcinogens* in 2000.[1]

5.      Notwithstanding their knowledge of this ultrahazardous toxicology, the Defendants disregarded EtO's harmful properties as an environmental toxin, resulting in dangerous volumes of EtO being released into the surrounding communities.

6.      Defendants' facilities have been emitting substantial quantities of EtO into the air supply of the surrounding community. As a result, those who lived, worked, and attended school in the surrounding area of the Facility have been unknowingly inhaling EtO in the air they breathe on a routine basis.

7.      Defendants never informed the surrounding community residents or those who attend school, live, or work nearby that the air systemically emitted by defendants was a toxic carcinogen. Defendant's failure to warn has thus exposed families to extremely dangerous toxins to which they can seek no reprieve without legal action.

8.      Through its industrial processes, Defendants emit EtO into the air, allowing it to be carried by the wind and natural air movement throughout the area surrounding the Facility. As such, residents in the area have unknowingly been exposed to carcinogenic EtO for decades.

9.      At all relevant times, Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to the Defendants since at least the 1980's.

---

[1] *National Toxicology Program, Department of Health and Human Services*, Fifteenth Edition. "EtO. "Page 1, https://ntp.niehs.nih.gov/sites/default/files/ntp/roc/content/profiles/ethyleneoxide.pdf.

Case ID: 250601472

Notwithstanding, Defendants chose to operate their businesses in a way such that EtO is emitted in a densely populated area full of children, houses, parks, schools, and businesses.

10.    On March 14, 2024, the EPA announced final amendments to the National Emissions Standards for Hazardous Air Pollutants for Ethyl Oxide Commercial Sterilizers and said the new standards will reduce the emissions from commercial sterilization facilities to the outside air by 90% and reduce the estimate cancer deaths from 8,000 in 1 million to 100 in 1 million.

## THE PARTIES

**Class Representatives with Property Value Damage Claims**

11.    Plaintiff and the Putative Class were personally exposed and continues to be exposed to hazardous and toxic substances, contaminants, and pollutants from the above-mentioned site via ingestion, inhalation, and or/dermal contact, during routine daily activities in their respective communities such as simply living in their home. Unfortunately, unbeknownst to Plaintiff and the Putative Class, they were inhaling Site-related air emissions while engaging in mundane activities such as going to work or attending schools.

12.    Plaintiff, Jeffrey Flesner currently resides at 1524 Pinecrest Road, Fort Myers, Florida 33919. Plaintiff has resided there from 1999 to Present. This address is located in the vicinity of the Site and/or contamination emanating or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Multiple Myeloma.

Case ID: 250601472

13.    Mr. Flesner was exposed to the Contaminants at the property, the neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

14.    Thus, in or around November 2023, Mr. Flesner was diagnosed with Multiple Myeloma.

15.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Flesner has and will continue to suffer severe physical injury, pain, and suffering.

16.    The contamination and polluting events at the Site have not been stabilized or eliminated. Mr. Flesner continues to reside within the areas impacted by the Contaminants, many of the toxic exposures are continuing in nature.

17.    Plaintiff Monica Flesner currently resides at 1524 Pinecrest Road, Fort Myers, Florida 33919. Plaintiff resided there from 1999 to present. This address is located in the vicinity of the Site and/or contamination emanating or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff suffered from Lung Cancer.

18.    Mrs. Flesner was exposed to the Contaminants at the property, the neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

19.    Thus, Mrs. Flesner was diagnosed with Breast Cancer.

20.    As a result of Defendants' reckless, negligent, and grossly negligent conduct, Ms. Flesner has and will continue to suffer severe physical injury, pain, and suffering.

Case ID: 250601472

21.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Flesner continues to reside within the areas impacted by the Contaminants, many of the toxic exposures are continuing in nature.

**Class Representatives with Individual Personal Injury Claims**

22.     Plaintiff Elaine McCoy currently resides at 78 Allen Street, Tiffin, Ohio 44883. Plaintiff has resided there from 2018 to Present. Mrs. McCoy also resided at 3213 S SR 53, Tiffin, Ohio 44883 from 2004-2018. Additionally, Plaintiff resided at 25 Sunny Lane, Tiffin, Ohio 44883 from 1989-2004. These addresses are located in the vicinity of the Site and/or contamination emanating or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Leukemia and Breast Cancer.

23.     Mrs. McCoy was exposed to the Contaminants at the property, the neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

24.      Thus, in or around 1993, Mrs. McCoy was diagnosed with Leukemia. In 2010, Mrs. McCoy was diagnosed with Breast Cancer.

25.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. McCoy continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

26.     Plaintiff Sarah Rumbaugh currently resides at 228 Kaufman Road, Evans City, Pennsylvania 16033. Plaintiff has resided there from 2014-Present. This address is located in the vicinity of the Site and/or contamination emanating or migrating from the Site. As a result of the

Case ID: 250601472

exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

27.    Mrs. Rumbaugh was exposed to the Contaminants at the property, the neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

28.    Thus, in or around October 2021, Mrs. Rumbaugh was diagnosed with Breast Cancer.

29.    The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Rumbaugh continues to reside within the areas and impacted by the Contaminants, many of the toxic exposures continuing in nature.

**Class Representatives with Medical Monitoring Claims**

30.    Plaintiff Sarah Rumbaugh currently resides at 228 Kaufman Road, Evans City, Pennsylvania 16033. Plaintiff has resided there from 2014-Present. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has been placed at a significantly increased risk of developing serious latent diseases, including but not limited to various forms of cancer, as well as neurological, reproductive, and hematological disorders.

31.    Although plaintiff has been diagnosed with breast cancer, he has not been diagnosed with any other EtO-related conditions to date, but requires ongoing medical surveillance and testing to monitor for latent injuries caused by prolonged EtO exposure.

Case ID: 250601472

32.    The contamination and polluting events at the Site have not been stabilized or eliminated. Plaintiff continues to reside within the areas impacted by the Contaminants, and the exposure is ongoing in nature.

**Allegations on Behalf of All Plaintiffs**

33.    Plaintiff Gaeann Wever currently resides at 1650 Long Meadow Rd, Fort Myers, FL 33919. Plaintiff has resided there since 2002. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

34.    Mrs. Wever was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

35.    Thus, in or around February 2024, Mrs. Wever was diagnosed with Breast Cancer.

36.    The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Wever continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

37.    Plaintiff Jovasia Sierra Spikes currently resides at 1629 Pawnee St, Fort Myers, Florida 33916. Plaintiff has resided there from 2018-Present. Mrs. Spikes also resided at 5501 5th Avenue, Fort Myers, Florida 33907. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer, Leukemia, Lung Cancer, and Non-Hodgkin's Lymphoma.

Case ID: 250601472

38.     Mrs. Spikes was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

39.     Thus, in or around 2016 Mrs. Spikes was diagnosed with Breast Cancer. Mrs. Spikes was diagnosed with Leukemia in 2019. She was also diagnosed with Lung Cancer and Non-Hodgkin's Lymphoma in 2024 and 2025 respectively.

40.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Spikes continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

41.     Plaintiff Gloria Tuin currently resides at 8006 Hidden River Dr, Apt. A, Tampa, FL 33617-7565. Plaintiff has resided there from 2022-Present. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

42.     Mrs. Tuin was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

43.     Thus, in or around October 2023, Mrs. Tuin was diagnosed with Breast Cancer.

44.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Tuin continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

Case ID: 250601472

45.     Plaintiff Karri Sue Meacham currently resides at 31 Harrison St, Tiffin, Ohio 44883. Plaintiff has resided there since 2019. Mrs. Meachum also resided at 377 Benner St, Tiffin, Ohio 44883. She resided there from 2008-2016. Both addresses are located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

46.     Mrs. Meacham was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

47.     Thus, in or around January 2016 Mrs. Meacham was diagnosed with Breast Cancer.

48.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Meacham continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

49.     Plaintiff Rhonda Johnson resided at 9063 Lenham Drive, Johnston, Iowa 50131. Plaintiff has resided there since 2001 to Present. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff suffered from Breast Cancer.

50.     Mrs. Johnson was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

51.     Thus, in or around May 2019 Mrs. Johnson was diagnosed with Breast Cancer.

Case ID: 250601472

52.    The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Johnson continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

53.    Plaintiff Nancy Uhl currently resides at 10140 Meredith Drive, Urbandale, Iowa 50322. Plaintiff has resided there since 2017 to Present. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

54.    Mrs. Uhl was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

55.    Thus, in or around December 2023, Mrs. Uhl was diagnosed with Breast Cancer.

56.    The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Uhl continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

57.    Plaintiff Darci Plumb resided at 4824 84th Street, Urbandale, Iowa 50322. Plaintiff resided there from 2020-Present. This address is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Breast Cancer.

58.    Mrs. Plumb was exposed to the Contaminants at the property, neighborhood, and other areas at or near the Site, through ingestion, inhalation, and direct dermal contact with air and surface and subsurface soil and materials.

Page **12** of **54**

Case ID: 250601472

59.     Thus, in or around April 1, 2024 Mrs. Plumb was diagnosed with Breast Cancer.

60.     The Contamination and polluting events at the Site have not been stabilized or eliminated. Mrs. Plumb continues to reside within the areas impacted by the Contaminants, many of the toxic exposures continuing in nature.

61.     Plaintiff Virginia Jackson currently resides at 11826 Longwood Gardenway, Houston, TX 77047. Plaintiff resided there from 2005-2016. This addresses is located in the vicinity of the Site and/or contamination emanating from or migrating from the Site. As a result of exposure to hazardous substances from the Site, Plaintiff has suffered and continues to suffer from Multiple Myeloma.

62.     The Contamination and polluting events at the Site have not been stabilized or eliminated.

63.     The hazardous and toxic substances that Plaintiff was exposed to are environmental contaminants as set out in Section 6.8.1 of the <u>ATSDR Public Health Assessment Guidance Manual</u>.

64.     Plaintiff is a member of an 'exposed population' as defined in Section 6.8.1 of <u>the ATSDR Public Health Assessment Guidance Manual</u> as follows:

A population is considered exposed if a completed exposure pathway, which links a contaminant with a receptor population, exists in the past, present, or future. An exposed population includes persons who ingest, inhale, or contact site contaminants or are exposed to radiation in the past, present or future. Examples of exposed persons include those who:

- *Have ingested, are ingesting, or will ingest the contaminant from one or more environmental media;*
- *Have inhaled, are inhaling, or will inhale the contaminant from one or more environmental media;*
- *Have contacted, are contacting, or will contact the contaminant in one or more environmental media; and*

Page **13** of **54**

Case ID: 250601472

- *Were exposed, are exposed to, or will exposed to gamma radiation from one or more environmental media.*

*If an environmental medium(soil) contains a contaminant of concern at a point of exposure (a residential yard), and evidence already exist that a route of exposure (ingestion) has occurred, is occurring, or will occur, the health assessor should assume that persons living at that residence are exposed or will be exposed. If the residential yard contains a vacant house, the health assessor should assume that future residents will be exposed. Persons should also be considered exposed if exposure has been verified by human biologic measurements or medical examination. For health assessments, human biologic measurements or medical examination are not necessary for the assignment of an exposure category to a population.*

65.     In addition to compensation for their injuries, Plaintiff and the Class seek punitive damages; and attorneys' fees and cost as allowed by law, and any other compensation this court deems just.

## JURISDICTION AND VENUE

66.     At all times relevant hereto, Defendants consented to general personal jurisdiction pursuant to 42 Pa. C.S.A. § 5301(2)(iii) by continuously and systematically conducting business within the Commonwealth of Pennsylvania, more specifically Philadelphia County.

67.     Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Pa. R.C.P. 1006 and Pa. R.C.P. 2179(a)(2) because Defendants "regularly" conducted business in Philadelphia County.

68.     Defendant, American Contract Systems, Inc is a corporation organized, existing, and incorporated under the laws of Minnesota, with its principal place of business located at 10900 Nuckols Road Suite 400, Glen Allen, Virginia 23060.

Case ID: 250601472

69.     At all times relevant hereto, American Contract Systems, Inc. regularly conducted business in Philadelphia County by, inter alia, generating substantial revenue, profit and sales from selling, shipping and distributing medical devices and instruments to healthcare systems, hospitals and healthcare providers, as well as by entering into contracts and agreements for pecuniary gain with companies and businesses that are located within and/or provide goods or services within Philadelphia County.

70.

71.     John Doe is a fictitious designation made pursuant to Pennsylvania Rule of Civil Procedure 2005 for any company, entity, corporation, limited liability company, fictitious name, or person whose name, identity and/or action(s) are presently unknown to plaintiff but whose wrongful, reckless, and/or negligent conduct, related to emissions of ethylene oxide from the American Contract Systems, Inc. plant(s) located at 11600 Adelmo Lane Fort Myers, FL; 7802 E Telecom Parkway, Temple Terrace, Florida 33637; 85 Shaffer Park Drive Tiffin, Ohio; 1601 SE Gateway Drive, Suite 120 Grimes, Iowa; 7702 Parnell St Houston, Texas; and 4040 Jackson Pointe Court, Building 4000 Zelienople, Pennsylvania, caused harm, injuries, and/or damages to the plaintiff and the putative class in this action. After conducting a reasonable search with due diligence, John Doe's actual name is unknown to plaintiff and the putative class at this time. A reasonable search to determine the actual name of John Doe has been conducted.

## OPERATIVE FACTS COMMON TO ALL COUNTS

Page **15** of **54**

Case ID: 250601472

72.    The Defendants, American Contract Systems, Inc. and John Doe, Defendants acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, the Defendants are or may be liable for the tortious acts, omissions, and activities of a co-Defendant set forth herein as an alter ego of such defendant or as a constituent member or part of an enterprise as the facts may establish.

73.    The Defendants operate the sterilization facility and have been operating the Facility(ies) since, if not prior to the 1990's.

74.    The Defendants conduct Ethylene Oxide sterilization on the real property(ies) on which each Facility is located.

75.    The Defendants are directly liable by virtue of their own conduct for the wrongful acts detailed herein.

76.    At all times material herein defendants acted by and through its actual, apparent or ostensible agents, servants, employees, workers, subsidiaries, affiliates (including one or more co-defendant), and others upon which they may be found vicariously liable, any and all of which or who, were acting at the time within the course and scope of their agency, duties, undertakings and authority, actual, apparent or ostensible. Alternatively, each defendant is or may be liable for the tortious acts, omissions and activities of a co-defendant set forth herein as an alter ego of such defendant or as a constituent member or part of an enterprise as the facts may establish.

Case ID: 250601472

77.    Plaintiff and the putative class have resided, worked, or attended school within approximately five miles or less from the Defendants' Facility for a significant amount of time while Defendants were emitting unsafe and hazardous levels of EtO into the air.

78.    Toxic chemicals and fumes released by Defendants were ongoing upon Plaintiff and the putative class's property and person throughout the duration of Plaintiff and the putative class's residence at Plaintiff's property.

79.    At the time of the purchase or lease of Plaintiff and the putative class's properties, and/or the time that Plaintiff and the putative class attended work or school, Plaintiff and the putative class were unaware that they were being subjected to dangerous levels of EtO, nor could Plaintiff and the putative class have known the extent of the EtO emissions coming from the Facility.

80.    EtO is an odorless and colorless flammable gas at room temperature that is produced in large volumes for industrial uses.

81.    Commercial / industrial medical product sterilizers use EtO in their sterilization processes.

82.    The EtO sterilization process generally begins by placing the medical products in a gas chamber. After air is pumped out of the chamber, EtO is introduced and allowed to diffuse into the products for several hours. Once the products are sterilized, the EtO is pumped out of the chamber, and the remaining EtO is supposed to slowly dissipate.

83.    Through their industrial processes, the Defendants emitted EtO into the air, allowing it to be carried by wind and natural air movement throughout the area surrounding the

Case ID: 250601472

facilities. As such, residents in the area have unknowingly been exposed to carcinogenic EtO for decades.

84.    EtO is highly reactive, readily taken up by the lungs, efficiently absorbed into the blood stream, and easily distributed throughout the human body.

85.    At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. There is no known safe level of cumulative EtO exposure; its carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and definitively known to Defendants. Furthermore, in 2016, the EPA presented new data revealing that the EPA determined EtO increased the risk of cancer 60 times what was previously thought.

86.    Notwithstanding, for decades, Defendants chose to operate their businesses such that it resulted in the emission of EtO in densely populated areas full of children, houses, parks, schools, and businesses, significantly increasing the risk of these residents contracting a serious disease.

87.     Further, although technologies to control EtO have been available and widely used since the 1980s, Defendants operated the Facility without using the best practices and control technologies available to reduce its EtO emissions.

88.    As sophisticated corporations and long-term users, transporters, and emitters of EtO, Defendants had superior knowledge and access to information regarding the dangers of EtO, more so than the general public or Plaintiff and the putative class.

89.    While the harmful properties of EtO are not widely known to an average person, the harmful properties of EtO have been known—or should have been known—to Defendants and

Case ID: 250601472

anyone in the business of using and emitting EtO as part of a sterilization process, for decades. By way of example:

   a.  In a 1977 article, the National Institute of Occupational Safety and Health ("NIOSH") concluded that occupational exposure to EtO may increase the frequency of genetic mutations in humans. The NIOSH report also raised concerns about the potential carcinogenicity of EtO.

   b.  In 1981, NIOSH released a subsequent report which recommended that EtO be regarded in the workplace as a potential occupational carcinogen. NIOSH based its recommendation on new evidence of EtO's carcinogenic, mutagenic, and reproductive hazards, including studies demonstrating that EtO induced cancer in experimental animals. Specifically, the studies showed an increase in instances of leukemia in line with increases in EtO concentrations, in addition to other adverse effects on reproductive health. An epidemiological investigation of Swedish workers exposed to EtO also revealed increased incidences of leukemia and other cancers.

   c.  In 1985, the U.S. Department of Health and Human Services published the Fourth Annual Report on Carcinogens and classified EtO as reasonably anticipated to be a human carcinogen.

   d.  In the early 1990s, NIOSH published the largest and most informative epidemiological study of EtO. The study analyzed over 18,000 employees working with EtO at fourteen different industrial facilities sterilizing medical equipment and food spices. The study found sufficient evidence to support a causal link between exposure to EtO and

Case ID: 250601472

increased mortality from lymphatic and hematopoietic cancers. Follow-up studies have additionally demonstrated an association between EtO exposure and breast cancer.

e. In 1994, as a result of these findings, the World Health Organization ("WHO") listed EtO as a Group 1 human carcinogen finding EtO to be carcinogenic to humans.

f. In 2000, the U.S. Department of Health and Human Services reclassified EtO to "known to be a human carcinogen."

g. The U.S. Department of Labor's Occupational Safety and Health Administration's (hereinafter "OSHA") 2002 fact sheet on EtO indicates that "[b]oth human and animal studies show that EtO is a carcinogen" and requires employers to provide clear signs and labels notifying workers of EtO's "carcinogenic and reproductive hazards."[2]

h. While most of the Ethylene Oxide Sterilizers in operation results in an EPA acceptable risk of less than or equal to 1 in a Million, in 2016, the EPA's Integrated Risk Information System similarly reclassified EtO as carcinogenic to humans and increased—by a multiple of 30 in adults and 60 in children—its estimate of EtO's cancer potency.[3]

i. This resulted in most Ethylene Oxide Sterilization Facility creating an Excess Lifetime Risk that is unacceptable and greater than 1 in a Million.

j. In August 2022, the USEPA completed an analysis that showed that Ethylene Oxide emission from some commercial sterilizers contribute to unacceptable excess lifetime

---

[2] See, Occupational Safety and Health Administration (OSHA), *OSHA Fact Sheet: Ethylene Oxide*, https://www.osha.gov/OshDoc/data_General_Facts/ethylene-oxide-factsheet.pdf, (last accessed: February 9, 2024).
[3] Max Blau and Lylla Younes, *The Dirty Secret of America's Clean Dishes*, ProPublica (Dec. 20, 2021) https://www.propublica.org/article/the-dirty-secret-of-americas-clean-dishes, (last accessed: February 9, 2024).

Case ID: 250601472

cancer risks for people living in nearby communities, where in some cases the excess lifetime cancer risk exceeded 100 in a Million https://www.epa.gov/hazardous-air-pollutants-ethylene-oxide/forms/community-engagement-ethylene-oxide-eto

90.    EtO exposure affects the most vulnerable members of the population. The EPA states that "for a single year of exposure to EtO, the cancer risk is greater for children than for adults. That is because EtO can damage DNA."

91.    Despite knowing these risks, Defendants' EtO sterilization process did not comply with safe and prudent methods of EtO sterilization.

92.    At all relevant times, Defendants—by way of failure to implement control measures to limit emissions, failure to upgrade sterilization equipment, intentional shortening of EtO de-gassing/aeration/quarantining time, and/or other unsafe practices—subjected Plaintiff and the surrounding community to unhealthy and dangerous levels of EtO in order to increase profits and/or cut costs.[4]

93.    At all relevant times, Defendants failed to train its employees and managers, resulting in unsafe practices which created risky EtO sterilization practices with the goal of saving money.

94.    Defendants had knowledge of faulty/ineffective training systems, faulty/ineffective supervision, and employees' unfitness to perform their jobs safely.

---

[4] See Replacing Ethylene Oxide Document from EPA, Attached.

Page **21** of **54**

Case ID: 250601472

95.    Exposure to EtO has been widely studied, and its negative health effects are well documented. Presently, there is evidence linking exposure to increased risk of lymphohematopoietic cancer such as non-Hodgkin's lymphoma, multiple myeloma, and lymphocytic leukemia; breast cancer; tumors in the lungs, uterus, and the brain; and reproductive and developmental impairments including increased rates of miscarriages and infertility.

96.    Commercial Medical sterilizers use the EtO sterilization process on over 20 billion healthcare products annually in the United States. The EtO sterilization process begins by placing medical equipment in a gas chamber. After air is pumped out of the chamber, EtO is injected and allowed to diffuse into the products for several hours. Once the medical equipment is sterilized, the EtO is pumped out of the chamber and the remaining EtO is allowed to slowly dissipate. Each time this sterilization cycle is run, EtO is emitted—whether through controlled or uncontrolled emissions known as "fugitive emissions"—into the air and inhaled by the surrounding community.

97.    EPA regulations currently do not require fugitive emissions to be reported, so tracked emission figures do not accurately account for these fugitive emissions, which include untracked ventilation due to lack of maintenance, faulty design, and other untracked escape pathways for this highly explosive air toxin.

98.    EtO is extremely flammable and explosive in its room-temperature gaseous form—therefore, it is typically handled and shipped as a refrigerated liquid to mitigate those risks.

99.    In fact, EtO is so explosive that it is one of the main components in thermobaric and "fuel-air explosive" weapons used by the US military, sometimes referred to as "vacuum bombs." These bombs often produce an atomic-mushroom-like smoke signature and blast characteristics that look like "mini-nukes." They are among the most powerful nonnuclear

Case ID: 250601472

weapons in our country's arsenal. EtO is a preferred compound for such military uses because it has a shock wave effectiveness of 5:1 compared to dynamite—in other words, to duplicate the shock wave of 5 pounds of dynamite, you need just 1 pound of EtO.[5]

100.    In addition to EtO's explosive quality, it is also odorless, unless one is to inhale very concentrated amounts, (likely only possible in occupational exposure scenarios). Other industries that handle chemicals with these characteristics—such as the liquified petroleum gas industry—combine an additive with its products to alert users and other nearby individuals of leaks. Such measures have proven to be effective in alerting propane users to a problem - and giving them the time they need to ensure their safety. Upon information and belief, Defendants have instituted no such readily available safety precautions with EtO.

101.    In manufacturing, distributing, and using EtO, Defendants have neglected to add any odorous substances to EtO to alert employees and residents in the neighborhoods of the Facility that EtO is endangering them.

102.    As such, Plaintiff has unknowingly been subjected to and breathed in EtO emissions for decades. All the while, the Facility emitted EtO, and Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and the cause of various illnesses.

**COUNT I**

**NEGLIGENCE**

**PLAINTIFF v. DEFENDANTS**

---

[5] Meyer R, Köhler, J., Homberg A. *Explosives. 6th ed*. Weinheim, Germany: Pg. 142.

Case ID: 250601472

103.    Plaintiff and the putative class re-alleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

104.    The Defendants were negligent in one or more of the following ways:

a.  Emitting dangerous and/or excessive amounts and levels of EtO from the Defendants' Plant;

b.  Emitting amounts of EtO from Defendants' Plant that were sufficient to increase the risk of cancer in plaintiff;

c.  Failing to warn Plaintiff and the putative class that they were at an increased risk of developing cancer due to inhaling the EtO being emitted from Defendants' Plant;

d.  Failing to implement, adopt, and/or enforce proper protocols and methods of reducing or eliminating emissions of EtO from the Defendants' Plant to non-harmful levels;

e.  Failing to adopt, implement, and/or enforce the appropriate and proper equipment, devices, and/or controls sufficient to eliminate or reduce emissions of EtO from the Defendants' Plant to non-harmful levels;

f.  Failure to select and utilize safer alternative methods other than EtO for the sterilization of the medical devices, instruments, and equipment, manufactured, assembled, and distributed at Defendants' Plant;

g.  Failing to study or investigate safer alternative methods other than EtO for the sterilization of the medical devices, instruments, and equipment manufactured, assembled, and distributed at Defendants' Plant;

Page **24** of **54**

Case ID: 250601472

h.  Failing to warn or advise Plaintiff, and the putative class that they were being exposed to EtO;

i.  Engaging in an ultrahazardous activity by emitting dangerous levels and amounts of EtO into the air surrounding Defendants' Plant;

j.  Failing to adequately record or track the amounts or levels of EtO being emitted from Defendants' Plant;

k.  Failing to study the effects of EtO, including EtO's effect of increasing the risk of developing cancer in individuals working within the Defendants' Plant;

l.  Failing to adequately, accurately, and thoroughly report the levels of EtO being emitted from Defendants' Plant;

m.  Failing to properly and safely store and/or contain the EtO at Defendants' Plant;

n.  Concealing the elevated risk of cancer associated with exposure to EtO emissions from Defendants' Plant;

o.  Failing to study the effects of EtO, including EtO's effect of increasing the risk of developing cancer in individuals living, working, and breathing the air in the communities and neighborhoods surrounding Defendants' Plant;

p.  Failing to test the air surrounding Defendants' Plant to measure or gauge the amount or levels of EtO being emitted from Defendants' Plant; and

q.  Subjecting plaintiff to elevated risk of developing cancer.

105.   The releases of the Contaminants into the air and onto the soil of the Plaintiff and the putative class is the proximate and legal cause of the injuries suffered by the Plaintiff and the putative class to their health and well-being and to their properties and the adjacent properties.

Case ID: 250601472

106.    Upon learning of the releases of the Contaminants, Defendants owed Plaintiff and the putative class a duty to timely notify Plaintiff and the putative class that the release of these Contaminants had occurred in the vicinity of Defendants' operations at the Site.

107.    Defendants breached that duty by failing to notify the Plaintiff and the putative class of the releases of Contaminants at the Site, and, consequently in the vicinity of Plaintiff and the putative class's home, school, and/or business.

108.    Upon learning of the release of the Contaminants, Defendants further had a duty to the Plaintiff and the putative class to act reasonably to remediate, contain, and eliminate the resulting contamination before it injured Plaintiff and the putative class.

109.    Defendants breached that duty by failing to act reasonably to remediate, contain, and eliminate the contamination before it injured Plaintiff and the putative class.

110.    As a result of Defendants' breaches of their duty to Plaintiff and the putative class by failing to act, reasonably to remediate, contain, and eliminate the releases of the Contaminants and resulting contamination, the Defendant's actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiff and the putative class.

111.    Defendants had a duty to the Plaintiff and the putative class to ensure that their facilities were safe and sufficiently secure as to prevent the releases of the Contaminants into the environment surrounding their facilities and the surrounding lands, including the Plaintiff and the putative class's home, school, and/or business.

112.    As a result of Defendants' breaches of their duty to Plaintiff and the putative class by failing to ensure that their air emission releases were safe and sufficiently secure as to prevent the releases of the Contaminants into the environment surrounding their facilities, Defendants are

Case ID: 250601472

the proximate and legal cause of the injuries suffered by the Plaintiff and the putative class to their health and well-being.

113.    Defendants had a legal duty to properly remediate the contamination from their activities at the Site and had full knowledge of the extent of the contamination and the threat it poses to human health and safety.

114.    Defendants willfully and wantonly breached their legal duty to properly take corrective actions to reduce and/or eliminate the air emissions to remediate the soil onto which the air contaminations are deposited despite full knowledge of the extent of contamination and the threat it poses to human health and safety.

115.    As a result of Defendants' breaches of their legal duty to properly take corrective actions to reduce and/or eliminate the air emissions and to remediate the contamination, despite full knowledge of the extent of the contamination and the threat it poses to human health and safety, Defendants are the proximate and legal cause of the injuries suffered by the Plaintiff and the putative class to their health and well-being.

116.    Plaintiff and the putative class have suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiff and the putative class. Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiff and the putative class so apparent as to entitle them to be protected against such actions or inactions.

WHEREFORE, Plaintiff and the putative class demand all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an

Case ID: 250601472

amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT II
## ABNORMALLY DANGEROUS ACTIVITY
## PLAINTIFF v. DEFENDANTS

117.    Plaintiff and the putative class incorporate the foregoing allegations as if fully set forth herein.

118.    Activities such as the allowance of air toxic emissions from business operations, as is the case herein, constitute an abnormally dangerous activity for which strict liability will apply.

119.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by implementing corrective actions to reduce and/or eliminate the air toxic's emissions emanating from the facility and preventing the deposition of said contaminants into the surrounding air, constitutes ultra hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

120.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to be released into the surrounding air and in doing so, failed to warn Plaintiff and the putative class of the dangerous condition that was caused thereby.

121.    The Defendant's use and emissions of EtO from Defendants' Plant necessarily involved a high degree of risk of serious harm to persons within Defendants' Plant and in communities surrounding Defendants' Plant as contemplated by Restatement (Second) of Torts §520(a), including by creating an increased risk of developing various forms of cancer, including

Case ID: 250601472

leukemia, lymphoma, multiple myeloma, various lymphoid cancers, breast cancer, brain cancer, lung cancer, pancreatic cancer, ovarian cancer, bladder cancer, and uterine cancer.

122.    The likelihood that harm would result from defendants' use and emissions of EtO was and is great, as contemplated by Restatement (Second) of §520(b) , because EtO is toxic, a known human carcinogenic, mutagenic, and hazardous to human beings when inhaled, EtO is easily distributed throughout the body when inhaled, and the defendants have emitted excessive and dangerous amounts of EtO into the air which thousands of human beings have breathed for multiple years and will continue to breathe in.

123.    The risk of harm posed by EtO is represented by the Defendants to be unable to be completely eliminated by the exercise of reasonable care, as contemplated by Restatement (Second) of Torts § 520(c), because EtO is inherently dangerous, toxic, a known human carcinogenic, mutagenic, and hazardous to human beings when inhaled.

124.    The Defendants' use and emissions of EtO was not a matter of common usage, as contemplated by Restatement (Second) of Torts § 520(d), because the use and emission of EtO into the air is not an activity that is commonly carried on by the great mass of mankind or by many people in the community.

125.    The Defendants' use and emissions of EtO were inappropriate to the place where the EtO was used and emitted, as contemplated by Restatement (Second) of Torts § 520(e), because of the high concentration and amount of human beings living, working, congregating, shopping, and breathing in the air in and surrounding Defendants' Plant including Plaintiff and the putative class.

Case ID: 250601472

126.    By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiff and the putative class.

127.    Defendants' use and emissions of EtO at Defendants' Plant produced a high degree of risk of some harm to Plaintiff and the putative class.

128.    Defendants' emissions of EtO provided no value to Plaintiff and the putative class, as contemplated by Restatement (Second) of Torts § 520(f), because the Defendants' use and emissions of EtO only increased the risk of cancer in Plaintiff and the putative class with no health benefits to inhalation of the EtO.

129.    At all times material hereto, EtO was defective and unreasonably dangerous.

130.    Defendants knew or should have known of the existence of a high degree of risk of harm to Plaintiff and the putative class, as a result of its activity herein.

131.    Defendants knew or should have known that the harm to Plaintiff and the putative class would be great.

132.    Any value to the Plaintiff and the putative class of the chemical EtO described herein is greatly outweighed by its dangerous attributes.

133.    As a direct and proximate result of the aforementioned strict liability, abnormally dangerous, and ultrahazardous activity of defendants, Plaintiff suffered the injuries and damages set forth throughout this complaint.

WHEREFORE, Plaintiff and the putative demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

Case ID: 250601472

# COUNT III
## PUBLIC NUISANCE
### PLAINTIFF v. DEFENDANT

134.    Plaintiff and the putative class realleges and reaffirms each and every allegation set forth in all of the preceding paragraphs as if fully stated herein.

135.    Defendants' use and emissions of EtO constitute an unreasonable interference with the public's right to breathe in clean air and—more specifically—air that does not contain inhalable carcinogens that place those who inhale them at an increased risk of developing cancers, miscarriages, and birth defects in their children.

136.    The conduct of Defendants, in their use and emissions of EtO, involves and involved a significant interference with the public health and the public safety because the Defendants' use and emissions of EtO places and placed those individuals who inhale the polluted air Defendants put into the environment at a significantly increased risk of developing various forms of cancer, suffering miscarriages, and developing birth defects in their children.

137.    The conduct of Defendants, in their use and emissions of EtO, is of a continuing nature because Defendants are still emitting EtO to this day, Defendants have been emitting EtO for 28 years, and because EtO's half-life causes it to remain in the air and environment for a significant amount of time all the while causing harm to those who inhale that air.

138.    The general public, Plaintiff, and the putative class have a right to breathe in air that does not place them at an increased risk of developing cancer at the rate their inhalation of the EtO emitted from Defendants' Plant placed them at.

Case ID: 250601472

139.    The general public, Plaintiff, and the putative class has a right to breathe clean air that does not contain dangerous and excessive levels of carcinogenic chemicals that increase one's risk of cancer when inhaled.

140.    The public's general right to breathe clean air is embodied in Article I of the Pennsylvania Constitution, Section 27, Natural Resources and the Public Estate, which expressly provides that: "The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic, and esthetic values of the environment."

141.    The Defendants, at all relevant times, knew that the levels of EtO emitted from Defendants' Plant would create a toxic, dangerous, ultrahazardous, and carcinogenic effect upon the health, safety, and wellbeing of persons breathing it including Plaintiff and the putative class.

142.    At all times relevant hereto, Defendants use and emissions of EtO from Defendants' Plant caused those who live and work in the area of the Defendants' Plant, including Plaintiff and the putative class, to breathe air containing dangerous and excessive levels of EtO on a regular and routine basis, causing substantially increased and elevated risks of developing cancer.

143.    As a direct and proximate result of the Defendants' improper, negligent, wrongful and grossly negligent use and emissions of EtO from Defendants' Plant, Plaintiff, the putative class, and the general public's right to breathe clean air without dangerous levels of carcinogens such as EtO was eliminated and/or severely diminished.

144.    As a direct and proximate result of the Defendants' improper, negligent, wrongful, and grossly negligent use and emissions of EtO from Defendants' Plant, Plaintiff and the putative class were caused to continually be exposed to EtO through regular and continuous inhalation.

Case ID: 250601472

145.    As a direct and proximate result of the Defendants' improper, negligent, wrongful and grossly negligent use and emissions of EtO from Defendants' Plant, Plaintiff and the putative class suffered the injuries and damages set forth throughout this complaint, including Plaintiff and the putative class's development of cancer.

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

**COUNT IV**

**FRAUD**

**PLAINTIFF v. DEFENDANTS**

146.    Plaintiff and the putative class re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

147.    At all times relevant hereto, Defendants falsely and fraudulently represented and continues to represent to Plaintiff and the putative class that the operations misconducted at Defendants' Plant are safe and pose no risk to Plaintiff and the putative class's health and wellbeing.

148.    At all times relevant hereto, Defendants falsely and fraudulently represented and continues to represent to Plaintiff and the putative class that nothing is emitted from Defendants' Plant that poses any risk to the health of Plaintiff and the putative class.

149.    At all times relevant hereto, Defendants falsely and fraudulently represented and continues to represent to Plaintiff and the putative class that nothing is emitted from Defendants' Plant that is toxic, hazardous, or carcinogenic.

Case ID: 250601472

150.    These representations made by Defendants were, in fact, false. When Defendants made these representations, Defendants knew and/or had reason to know that those representations were false and Defendants willfully, wantonly, and recklessly disregarded the inaccuracies in their representations and the dangers and health risks to Plaintiff and the putative class.

151.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff and the putative class, such that Plaintiff and the putative class had no knowledge that they were continuing to breathe in a toxic and harmful carcinogen (EtO), all of which evinced a callous, reckless, willful, and depraved indifference to the health, safety, and wellbeing of Plaintiff and the putative .

152.    In representations to Plaintiff and the putative class, Defendants fraudulently concealed and intentionally withheld the following material information:

    a.    That EtO was being emitted from Defendants' Plant into the air surrounding Defendants' Plant;

    b.    That EtO is carcinogenic;

    c.    That EtO is a known human carcinogen;

    d.    That defendants routinely emit dangerous amounts of EtO;

    e.    That EtO causes various forms of cancer, including leukemia, lymphoma, multiple myeloma, various lymphoid cancers, breast cancer, brain cancer, lung cancer, pancreatic cancer, ovarian cancer, bladder cancer, and uterine cancer;

    f.    That EtO can be carried by the wind to the neighborhood surrounding Defendants' Plant;

    g.    That EtO is easily absorbed through the human body through inhalation;

Page **34** of **54**

Case ID: 250601472

h.  That Plaintiff and the putative class was previously and remains at an increased risk of developing cancer solely by breathing in the air due to Defendants' emissions of EtO;

i.  That the risk of Plaintiff and the putative class developing cancer was previously and remains significantly higher than the risk of an average Pennsylvanian and average American due to defendants' excessive and dangerous emissions of EtO;

j.  That breathing in EtO is dangerous.

153.  At all relevant times, Defendants were obligated to disclose to Plaintiff and the putative class the dangerous, hazardous, and carcinogenic nature of Defendants' EtO emissions, including but not limited to the resulting increased risk in cancer from breathing in this EtO.

154.  At all relevant times, Defendants had sole access to the material facts concerning the dangerous, hazardous, and carcinogenic nature of Defendants' EtO emissions and the EtO's propensity to cause various forms of cancer and birth defects.

155.  Defendants' concealment and omissions of material facts concerning the dangerous, hazardous, and carcinogenic nature of Defendants' EtO emissions, and the fact that Defendants' Plant emits dangerous and significant amounts of EtO, were made purposefully, willfully, wantonly, and/or recklessly to mislead Plaintiff and the putative class, into justifiably relying on these misrepresentations, concealment, and omissions, and thereby believing they were not at risk of any harmful health effects from the air they were breathing, including increased risk of various forms of cancer and birth defects.

Case ID: 250601472

156.    At the time these representations were made by Defendants, and at the times Plaintiff and the putative class were inhaling EtO, Plaintiff and the putative were unaware of the falsehood of these representations and reasonably believed them to be true.

157.    At the time these representations were made by Defendants, Defendants knew these representations were false and/or displayed a recklessness as to whether or not these representations were false.

158.    In justifiable reliance on these representations made by Defendants, Plaintiff and the putative class were induced to, and did in fact, remain in areas in Defendants' Plant and surrounding Defendants' plant breathing in air that was polluted with EtO, which factually and proximately caused Plaintiff and the putative class to develop cancer, and all the injuries and damages set forth throughout this complaint.

159.    Plaintiff and the putative class at all times had no reason to know or reason to uncover the truth behind Defendants' material omissions of fact surrounding their EtO emissions and air quality.

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT V
## FRAUDULENT CONCEALMENT
### PLAINTIFF v. DEFENDANTS

160.    Plaintiff and the putative class re-allege and affirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

Case ID: 250601472

161.    At all relevant times, Defendants knew that EtO was toxic, harmful and carcinogenic.

162.    At all relevant times, Defendants knew that their emissions of EtO would be breathed in by persons and breathed in by Plaintiff and the putative class.

163.    At all relevant times, Defendants knew that those persons who inhaled the EtO from Defendants' Plant, including Plaintiff and the putative class were placed at an increased risk of developing various forms of cancer, including leukemia, lymphoma, multiple myeloma, various lymphoid cancers, breast cancer, brain cancer, lung cancer, pancreatic cancer, ovarian cancer, bladder cancer, and uterine cancer.

164.    At all relevant times, Defendants were obligated to disclose and warn Plaintiff and the putative class the foregoing facts that Defendants fraudulently concealed because defendants were in a superior position to know the true nature and dangers of the EtO emitted from Defendants' Plant.

165.    The facts concealed and/or not disclosed by Defendants to Plaintiff and the putative class were material facts that a reasonable person would have considered important in deciding whether to remain spending time in area in Defendants' Plant and/or surrounding Defendants' Plant where EtO emissions were present.

166.    Defendants intentionally concealed and/or failed to disclose the true nature and dangers of Defendants' EtO emissions from Defendants' Plant so that Plaintiff and the putative class would not know of Defendants' dangerous misconduct and would not draw attention to Defendants' wrongdoing.

Case ID: 250601472

167.    Defendants, by their concealment, prevented plaintiff from acquiring material information regarding the nature and dangers associated with Defendants' EtO emissions, including the fact that Defendants' Plant emitted dangerous amounts of EtO, EtO was toxic and carcinogenic, and that Defendants' EtO emissions placed Plaintiff and the putative class at an increased risk of developing cancer.

168.    At all relevant times, Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiff and the putative class that:

a.    That EtO was being emitted from Defendants' Plant into the air surrounding Defendants' Plant;

b.    That EtO is carcinogenic;

c.    That EtO is a known human carcinogen;

d.    That Defendants routinely emit dangerous amounts of EtO;

e.    That EtO causes various forms of cancer, including leukemia, lymphoma, multiple myeloma, various lymphoid cancers, breast cancer, lung cancer, pancreatic cancer, ovarian cancer, bladder cancer, and uterine cancer;

f.    That EtO can be carried by the wind to the neighborhoods surrounding Defendants' Plant;

g.    That EtO is easily absorbed through the human body through inhalation;

h.    That Plaintiff and the putative class previously were and currently remains at an increased risk of developing cancer solely by breathing in the air due to Defendants' emissions of EtO;

Case ID: 250601472

    i.   That the risk of Plaintiff putative class developing cancer is significantly higher than the risk of an average Pennsylvanian and average American due to Defendants' excessive and dangerous emissions of EtO;

    j.   That Defendants' Plant was the 6th largest EtO emitter in the country based on defendants' 2014 emissions alone;

    k.   That breathing in EtO is dangerous.

169.    As a direct factual and proximate cause and result of Defendants' fraudulent concealment as described herein and throughout this complaint, Plaintiff and the putative class suffered the injuries and damages as averred in this complaint.

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT VI
## **NEGLIGENT MISREPRESENTATION**
### PLAINTIFF v. DEFENDANTS

170.    Plaintiff and the putative class re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

171.    At all times relevant hereto, Defendants negligently misrepresented and continue to misrepresent to Plaintiff and the putative class that the operations misconducted at Defendants' Plant are safe and pose no risk to the health and wellbeing of Plaintiff and the putative class.

Case ID: 250601472

172.    At all times relevant hereto, Defendants negligently misrepresented and continue to misrepresent to Plaintiff and the putative class that nothing is emitted from Defendants' Plant that poses any risk to the health of the Plaintiff and the putative class.

173.    At all times relevant hereto, Defendants negligently misrepresented and continue to misrepresent to Plaintiff and the putative class that nothing is emitted from Defendants' Plant that is toxic, hazardous, or carcinogenic.

174.    These negligent misrepresentations made by Defendants were, in fact, false. When Defendants made these representations, Defendants knew and/or ought to have known that these representations were false.

175.    These representations were made by Defendants with the intent to induce Plaintiff and the putative class to act by continuing placing themselves in environments and places where they were and would be breathing in a toxic and harmful carcinogen (EtO) emitted by Defendants' acts and omissions and to not draw any attention to Defendants' wrongdoing.

176.    In representations to Plaintiff and the putative class defendants negligently misrepresented the following:

a.    That EtO was being emitted from Defendants' Plant into the air surrounding Defendants' Plant;

b.    That EtO is carcinogenic;

c.    That EtO is a known human carcinogen;

d.    That Defendants routinely emit dangerous amounts of EtO;

Case ID: 250601472

e.  That EtO causes various forms of cancer, including leukemia, lymphoma, multiple myeloma, various lymphoid cancers, breast cancer, brain cancer, lung cancer, pancreatic cancer, ovarian cancer, bladder cancer, and uterine cancer;

f.  That Defendants emitted more EtO into the air surrounding Defendants' Plant than any other company or person in the Commonweath of Pennsylvania;

g.  That EtO can be carried by the wind to the neighborhoods surrounding Defendants' Plant;

h.  That EtO is easily absorbed through the human body through inhalation;

i.  That Plaintiff and the putative class is at an increased risk of developing cancer solely by breathing in the air due to Defendants' emissions of EtO;

j.  That the risk of Plaintiff and the putative class developing cancer is significantly higher than the risk of an average Pennsylvanian and average American due to Defendants' excessive and dangerous emissions of EtO;

k.  That Defendants' Plant was the 6th largest EtO emitter in the country based on defendants' 2014 emissions alone;

l.  That breathing in EtO is dangerous.

177.  In justifiable reliance on these negligent misrepresentations made by Defendants, Plaintiff and the putative class was induced to, and did in fact, remain in areas in Defendants' Plant and surrounding Defendants' plant breathing in air that was polluted with EtO, which factually and proximately caused them to develop cancer, and all the injuries and damages set forth throughout this complaint.

Case ID: 250601472

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT VII
## <u>CIVIL CONSPIRACY</u>
## PLAINTIFF v. DEFENDANTS

178.    Plaintiff and the putative class re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

179.    At all times relevant hereto, Defendants, by and through their agents, officers, executives, board members, employees, and/or servants, were engaged in a civil conspiracy with Defendants to unlawfully emit dangerous and excessive amounts of EtO from Defendants' Plant thereby exposing Plaintiff and the putative class to a known human carcinogen and an increased risk of developing cancer.

180.    At all times relevant hereto, Defendants, by and through their agents, officers, executives, board members, employees, and/or servants, were engaged in a civil conspiracy with Defendants to unlawfully conceal from Plaintiff and the putative class the dangerous properties, toxic properties, mutagenic properties harmful properties, carcinogenic properties, and amounts of the EtO being emitted inside of and from Defendants' Plant.

181.    At all times relevant hereto, Defendants by and through their agents, officers, executives, board members, employees, and/or servants, were engaged in a civil conspiracy with defendants were acting together—in unlawfully emitting dangerous and excessive amounts of EtO

Case ID: 250601472

within and from Defendants' plant—with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose.

182.    At all times relevant hereto, Defendants by and through their agents, officers, executives, board members, employees, and/or servants, were engaged in civil conspiracy with Defendants were acting together—in concealing from Plaintiff and the putative class the dangerous properties, toxic properties, mutagenic properties, harmful properties, carcinogenic properties, and amounts of the EtO being emitted inside of and from the Defendants' Plant—with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose.

183.    To this day, Defendants by and through their agents, officers, executives, board members, employees, and/or servants, are still engaged in a civil conspiracy with Defendants to conceal from Plaintiff and the putative class the public the dangerous properties, toxic properties, mutagenic properties, harmful properties, carcinogenic properties, and amounts of the EtO being emitted inside of and from Defendants' Plant.

184.    At all times relevant hereto, the Defendants jointly and collectively engaged in numerous overt acts in furtherance of and for the common purpose of maintaining their civil conspiracy, including but not limited to:

      a.    Purchasing or otherwise acquiring EtO;

      b.    Sharing in and enjoying the profits of EtO use and emissions;

      c.    Using and emitting excessive and dangerous amounts of EtO from Defendants' Plant;

      d.    Orchestrating, supervising, facilitating, or otherwise participating in the use of EtO within the Defendants' Plant;

Case ID: 250601472

e.  Orchestrating, supervising, facilitating, or otherwise participating in the emissions of EtO from the Defendants' Plant into neighboring communities and neighborhoods surrounding Defendants' Plant;

f.  Orchestrating, supervising, facilitating, or otherwise participating in the concealment of EtO emissions from Defendants' Plant;

g.  All of the overt acts described in this Complaint all of which form the basis for Plaintiff and the putative class's claims of negligence, gross negligence, willful and wanton misconduct, strict liability, public nuisance, private nuisance, fraud, fraudulent concealment, and negligent misrepresentation in this action;

h.  Affirmatively and overtly agreeing to intentionally conceal from Plaintiff and the putative class the dangers and carcinogenicity of EtO;

i.  Affirmatively and overtly agreeing to intentionally conceal from Plaintiff and the putative class the fact that EtO was being emitted within and from Defendants' Plant;

j.  Affirmatively and overtly agreeing to intentionally conceal from Plaintiff and the putative class the amounts of EtO being emitted within and from Defendants' Plant;

k.  Affirmatively and overtly agreeing to intentionally conceal from Plaintiff the putative class dangers and carcinogenicity of EtO;

l.  Affirmatively and overtly agreeing to intentionally conceal from Plaintiff and the putative class the fact that EtO was being emitted within and from Defendants' Plant;

Case ID: 250601472

m.   Affirmatively and overtly agreeing to intentionally conceal from Plaintiff and the putative class the amounts of EtO being emitted within and from Defendants' Plant;

n.   Taking the steps to actively emit dangerous and excessive EtO emissions within and from Defendants' Plant;

o.   Intentionally installing and maintaining devices and equipment that were inadequate to prevent the EtO emissions within and coming from Defendants' Plant from harming others and causing cancer in those persons breathing in the EtO, including Plaintiff and the putative class;

p.   Overtly and affirmatively representing to others that the EtO within and being emitted from Defendants' Plant was safe and would not cause cancer; and

q.   Overtly and affirmatively representing to others that the Defendants' Plant was safe and did not pose any risk of harm to those inside or around it.

185.   All of the above acts were unlawful and were substantial acts in furtherance of the Defendants' conspiracy.

186.   One or more of the above substantial acts in furtherance of the Defendants' conspiracy were committed within the Commonwealth of Pennsylvania. Defendants, at all times were aware of these acts.

187.   Other substantial acts in furtherance of Defendants' conspiracy that occurred in Pennsylvania include all of the acts and omissions specifically outlined and averred in this complaint, and which also form the basis for Plaintiff and the putative class's negligence, strict

Case ID: 250601472

liability, public nuisance, private nuisance, fraud, fraudulent concealment, negligent misrepresentation, and civil conspiracy claims.

188.    The unlawful acts and unlawful conduct upon which Plaintiff and the putative class's civil conspiracy claim is based include Plaintiff and the putative class's civil causes of action for the torts of negligence, strict liability, public nuisance, fraud, fraudulent concealment, negligent misrepresentation, and violation of the Pennsylvania Constitution, as alleged throughout the entirety of this Complaint.

189.    As a direct and proximate result of the civil conspiracy committed by Defendants, the Plaintiff and the putative class suffered the injuries and damages as set forth throughout the entirety of this Complaint.

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT VIII
## <u>VIOLATION OF ARTICLE 1, SECTION 27 OF THE PENNSYLVANIA CONSTITUTION</u>
### PLAINTIFF v. DEFENDANTS

190.    Plaintiff and the putative class re-allege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

191.    At all times relevant hereto, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, Plaintiff, and the putative class had a right to clean air.

Case ID: 250601472

192. For all the reasons outlined throughout the entirety of this complaint, the Defendants violated and invaded Plaintiffs right, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, to clean air by emitting excessive and dangerous amounts of EtO that Plaintiff and the putative breathed in and consequently acquired cancer from.

193. The Defendants violated and invaded Plaintiff and the putative class's right, pursuant to Article 1, Section 27 of the Pennsylvania Constitution, to clean air by committing all the various acts and omissions that are specifically outlined and averred in this complaint, and which also form the basis for plaintiff and the putative class's negligence, strict liability, public nuisance, fraud, fraudulent concealment, negligent misrepresentation, and civil conspiracy claims.

194. At all times relevant hereto, Defendants were bound by Article 1, Section 27 of the Pennsylvania Constitution's mandate to ensure that people in Pennsylvania, including Plaintiff and the putative class, have clean air to breathe.

195. Plaintiff and the putative class are the class of persons to whom the benefit of Article 1, Section 27 of the Pennsylvania Constitution was specifically conferred.

196. It was the intent of the legislature and citizens and residents of Pennsylvania that a private right of action and remedy exist pursuant to Article 1, Section 27 of the Pennsylvania Constitution.

197. A private right of action pursuant to Article 1, Section 27 of the Pennsylvania Constitution is consistent with the underlying purpose of the Article 1, Section 27 of the Pennsylvania Constitution to protect people in Pennsylvania from breathing, polluted, unclean or unsafe air.

Case ID: 250601472

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages, in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages and costs on all counts.

## COUNT IX
## MEDICAL MONITORING
### PLAINTIFF v. DEFENDANTS

198.    Plaintiffs and the Medical Monitoring Class also seek consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the exposure risk of the contaminants.

199.    Defendants' past and continued negligent acts and omissions in operating and maintaining the site are the proximate cause of higher than normal, in fact, excessive exposure to the Contaminants.

200.    The resulting exposure has significantly increased the risk of Plaintiffs and the putative class  contracting serious latent diseases, including but not limited to cancer, autoimmune diseases, respiratory and reproductive illnesses, cardiac and central nervous system illnesses, and other serious health conditions.

201.    Each and every one of the Plaintiffs and the putative class will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

Case ID: 250601472

202.    In order to compensate Plaintiffs and the putative class for damages suffered to Defendants' acts, each and every Plaintiff and the putative class requires, among other things, that Defendants collectively pay the past and future cost of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination emanating from the Site and throughout the surrounding residential neighborhoods.

203.    As part of the medical monitoring program, Plaintiffs and the putative class should retain their freedom of choice relative to choosing their experts and medical providers.

204.    Plaintiffs and the putative class  will suffer irreparable harm if the requested medical monitoring program is not implemented because they are in danger of suffering catastrophic latent diseases as a result of their prolonged exposure to toxic and hazardous substances caused by Defendants' negligence.

205.    Plaintiffs and the putative class  request that the Court appoint a plan administrator, require the Defendants to fund the medical monitoring plan, and reserve the jurisdiction to enforce the terms and conditions of the plan.

Accordingly, Plaintiffs and the putative class  are entitled to a medical monitoring program which provides for medical testing, surveillance, monitoring, and study of the Plaintiffs and the Class for conditions caused by exposure to the references substances, as well as payment of their attorney's fees and expenses, and any other relief this court deems just and proper.

WHEREFORE, Plaintiff and the putative class demands all damages allowed under the laws of the Commonwealth of Pennsylvania against all Defendants, including punitive damages,

Page **49** of **54**

Case ID: 250601472

in an amount in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, delay damages, and cost on all counts.

## CLASS ACTION ALLEGATIONS

206.    Plaintiffs and the putative class bring this action as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed subclasses and seek to certify and maintain it as a class action pursuant to Pennsylvania Rule of Civil Procedure 1702, subject to amendment and additional discovery as follows:

    a.    All residents of Fort Myers, Florida; Temple Terrace, Florida; Tiffin, Ohio; Grimes, Iowa; Houston, Texas; and Zelienople, Pennsylvania and surrounding communities who have been exposed to the toxic contaminants and hazardous emissions, including but not limited to Ethylene Oxide ("EtO"), released by Defendants at or from the Facility, and who have suffered bodily injuries, including but not limited to cancers, neurological disorders, reproductive harm, or other serious health conditions, as a result of their exposure to the aforementioned toxins (the "Bodily Injury Class").

    b.    Plaintiffs Elaine McCoy and Sarah Rumbaugh serve as the proposed class representatives for the Bodily Injury Class.

    c.    All owners of real property in Fort Myers, Florida; Temple Terrace, Florida; Tiffin, Ohio; Grimes, Iowa; Houston, Texas; and Zelienople, Pennsylvania , and surrounding communities whose property value has been diminished due

Case ID: 250601472

to the known or perceived contamination in the area, and/or stigmatization of property (the "Property Value Damage Class").

d. Plaintiffs Jeffrey Flesner and Monica Flesner serve as the proposed class representatives for the Property Value Damage Class.

e. All residents of Allentown, Pennsylvania and surrounding communities who have been exposed to toxic contaminants, including but not limited to Ethylene Oxide ("EtO"), released by Defendants at or from the Facility, and who seek to establish medical monitoring as "reasonably anticipated" consequential damages resulting from their exposure to the aforementioned carcinogenic and mutagenic emissions (the "Medical Monitoring Class").

f. Plaintiff Sarah Rumbaugh serves as the proposed class representatives for the Medical Monitoring Class.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the Bodily Injury Class, Property Damage Value Class, and the Medical Monitoring Class, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

a. Certification of this action as a class action under Pennsylvania Rule of Civil Procedure 1702, and appointment of Plaintiff as a Class Representative and her counsel as Class Counsel;

b. An award of damages, including nominal and compensatory damages, as allowed by law and in an amount to be determined at trial, including damages

Case ID: 250601472

for physical injury, property diminution, loss of use and enjoyment, and other economic and non-economic losses;

c.  An award of punitive damages as allowed by law based on Defendants' willful, wanton, and reckless conduct, and in an amount to be determined at trial;

d.  An award of attorneys' fees, costs, and litigation expenses;

e.  An award of prejudgment interest on all amounts awarded;

f.  Establishment and funding of a comprehensive medical monitoring program for the Medical Monitoring Class, including court-supervised diagnostic testing, surveillance, and treatment access;

g.  An Order for equitable, declaratory, and injunctive relief requiring Defendants to remediate EtO contamination, cease unlawful emissions, disclose risk to affected communities, and take all steps necessary to protect class members from future harm; and

h.  Such other and further relief as this Court may deem just and appropriate in the interest of justice and equity.

## JURY TRIAL DEMAND

Plaintiff and the putative class demand a trial by jury on all issues.

Page **52** of **54**

Dated: June 11, 2025

Respectfully submitted,

FELLERMAN & CIARIMBOLI LAW, PC

Gregory A. Cade
Kevin B. McKie
Gary A. Anderson
Dr. Corey Masuca
Jordan A. Cade
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Ave. S.
By: _____
Birmingham, AL 35205
Edward J. Ciarimboli, Esquire
T: (205) 328-9200
Fellerman & Ciarimboli Law, P.C.
F: (205) 328-9456
183 Market Street, Suite 200
Kingston, PA 18704
GregC@elglaw.com
570-718-1444
Kmckie@elglaw.com
Counsel for Plaintiffs
Gary@elglaw.com
Cmasuca@elglaw.com
Jordan@elglaw.com

*Attorneys for Plaintiff and the Putative Class*

Case ID: 250601472

## <u>CERTIFICATION</u>

It is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by are willfully false, I am subject to punishment.

Dated: June 11, 2025                    Respectfully submitted,

Gregory A. Cade
Kevin B. McKie
Gary A. Anderson
Corey Masuca
Jordan A. Cade
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Ave. S.
Birmingham, AL 35205
T: (205) 328-9200
F: (205) 328-9456
GregC@elglaw.com
Kmckie@elglaw.com
Gary@elglaw.com
Cmasuca@elglaw.com
Jordan@elglaw.com

***Attorneys for Plaintiff and the Putative Class***

Case ID: 250601472

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

**FLESNER ETAL VS AMERICAN CONTRACT SYSTEMS ETAL**

<u>JUNE</u> TERM <u>2025</u>

No. <u>01472</u>

**CASE MANAGEMENT ORDER**
**FOR ASBESTOS-RELATED PERSONAL INJURY CLAIMS**

    **AND NOW**, this **12th day** of **June 2025**, the court enters the following Case Management Order governing personal injury cases involving exposure to asbestos or asbestos-containing products.

    This Case Management Order supersedes all prior Case Management Orders entered in the Asbestos Litigation Program and shall apply to all cases now pending and subsequently filed in this Court.

**I. ADMINISTRATIVE MATTERS**

    A. <u>Liaison counsel</u> have been appointed to facilitate communication between the parties and the Court, including the dissemination of any documents filed on the Global Docket to their respective constituent groups. If a party, or their respective counsel, has any questions or concerns related to the Asbestos Litigation Program, those questions or concerns should first be addressed to their respective liaison counsel. [1]

---

[1] As of the date of this order, the current liaison counsel are:

<u>Plaintiffs' liaison counsel</u>
Laurence Brown
Brookman, Rosenberg, Brown & Sandler
30 South 15th Street
Philadelphia, PA 19102

B.  There shall be no reverse bifurcation of any asbestos case, unless agreed upon by all counsel involved and approved by the Court.

C.  All punitive damage claims in asbestos cases shall be deferred.

D.  <u>Asbestos Cases Projected Trial Grouping</u>: Once a year, the Court will enter an order with a list of cases to be scheduled for projected trial dates in the following year.  Asbestos cases shall be organized in groups of a maximum of 10. Liaison counsel shall present the Court with a proposal of trial groups that takes into consideration the following criteria:

i.  Same law. Cases that involve application of the law of different states will not be tried together;

ii.  Same disease. The disease category for each case in a group must be identical. The disease categories of cases to be grouped for trial are mesotheliomas, peritoneal mesotheliomas, lung cancers, other cancers and non-malignancy cases;

iii.  Same plaintiff's law firm. Primary trial counsel for all cases in each group will be from a single plaintiff firm. Cases where Philadelphia plaintiff firms serve as local counsel for out-of-state counsel may be grouped with cases from the local firm; however, cases will not be tried together if the plaintiffs are not represented by the same firm;

_____

(215) 569-4000
LBrown@brbs.com

Defense liaison counsel
Catherine Jasons
Kelley Jasons McGowan Spinelli Hanna & Reber LLP
1818 Market Street, Suite 3205
Philadelphia, PA 19103
(215) 854-0658
CJasons@kjmsh.com

The parties and their respective counsel are reminded of their continuing obligation to review the Global Docket for any changes that may occur after the entry of this Case Management Order.

iv.  Pleural mesothelioma is a disease that is distinct from mesotheliomas originating in other parts of the body, and will not be tried on a consolidated basis with non-pleural mesothelioma cases;

v.  Non-pleural mesothelioma cases will be further classified for trial, so that non-pleural mesothelioma cases allegedly caused by occupational exposure will not be tried on a consolidated basis with non-pleural mesothelioma cases allegedly caused by para-occupational (bystander) exposure;

vi.  Such other factors as determined appropriate in weighing whether all parties to the litigation can receive a prompt and just trial. The Court's present backlog of asbestos cases shall not be an overriding factor in the grouping determination.

E.  Mediation: Once grouped and assigned a projected trial date, counsel are urged to seek mediation from a special panel of former judges named in ¶ 3 of General Court Regulation 2023-01.  All parties will share the expense of mediation.

## II. PLEADINGS

A. <u>Short-Form Complaints</u>

A short-form complaint shall be filed and served in every case in accordance with the Pennsylvania Rules of Civil Procedure.  Plaintiffs may incorporate by reference the long-form complaints filed on the above-captioned docket.

The short-form complaint shall contain the information required by Rule *1041.1(B) of the Philadelphia Civil Rules.

A short-form complaint that contains premises liability claims shall include the name and address of each work site at which the plaintiff alleges exposure to asbestos and the dates during which the plaintiff or the decedent worked at each such work site.

B. <u>Preliminary Objections</u>

In response to each short-form complaint, any defendant may file preliminary objections in accordance with the Pennsylvania Rules of Civil Procedure and Rules *1028 and *1041.1 of the Philadelphia Civil Rules.  The preliminary objections shall comply with the procedures set forth in Sections V(C) and V(E). Plaintiffs' response to preliminary objections shall be subject to Rule 1028(c)(1) of the Pennsylvania Rules of Civil Procedure and Rule *1028(c) of the Philadelphia Civil Rules.

C. <u>Answers to Complaints</u>

Defendant's answers to complaints are governed by Rule 1041.1 of the Pennsylvania Rules of Civil Procedure and Rule *1041.1 of the Philadelphia Civil Rules.

## III. GIFFEAR DOCKET

Cases that do not state a valid claim pursuant to Giffear v. Johns-Manville Corp., 632 A.2d 880 (Pa. Super. 1993), *aff'd sub nom. Simmons v. Pacor, Inc*., 674 A.2d 232 (Pa.1996), shall be placed on an inactive docket.

To reactivate a case that has been discontinued pursuant to *Giffear*, a motion to reactivate must be filed and include all necessary medical reports supporting the motion.  The motion shall be filed in letter brief format consistent with Section V(C) of this order.

## IV. DISCOVERY

A. Unless otherwise agreed to by opposing counsel or upon a showing of exigent circumstances, all discovery shall take place in Philadelphia.  A party may notice a deposition to take place at a location outside of Philadelphia so long as that party provides video conferencing, or telephone conferencing if video conferencing is impracticable, at no expense to opposing parties.  All remote depositions shall be conducted under the guidelines set forth in this Court¿s Order of January 11, 2021, attached as Exhibit A.

B. A notice of deposition shall be served on all parties at least 14 days before the scheduled deposition date unless, upon agreement of the parties, medically exigent circumstances exist or court approval is obtained for a shorter period.  The notice of deposition shall include the intended dates for the continuation of the deposition, if necessary.  Plaintiff shall provide the defendants with answers to Defendants' Common Interrogatories no later than five days before the scheduled deposition date of any plaintiff.  Each plaintiff firm will use its best efforts to limit the number of depositions scheduled to occur concurrently to two depositions per firm, per day, regardless of whether the depositions are for witnesses in the same case or different cases.

C. The following deadlines shall apply for the completion of discovery and the exchange of

expert reports, as set forth in the Asbestos Litigation Schedule 2:

<u>180 Days before the projected jury selection-</u>
Plaintiffs shall serve answers to Defendants' Common Interrogatories and Requests for
Production Directed to Plaintiffs, including information relating to Bankruptcy Trust Filings as set
forth in this Court's Order of April 5, 2010, attached as Exhibit B.

Plaintiffs shall forward the identification of all health care providers along with addresses to
defense counsel and RecordTrak.

Plaintiffs shall forward HIPAA compliant authorization forms signed by plaintiffs to RecordTrak.


<u>120 days before the projected jury selection</u> -

Plaintiffs shall serve medical, economic and liability expert reports.

Plaintiffs shall produce to lead defense counsel all diagnostic materials in the possession of
plaintiffs or their counsel and all diagnostic material reviewed by plaintiffs' experts.  This
includes, but is not limited to, x-rays, CT scans, pathology and cytology.

Plaintiffs shall serve witness lists identifying the defendants whose products the witnesses are
expected to identify.

<u>100 days before the projected jury selection</u> - Completion of plaintiffs' depositions.

---

2  The Asbestos Litigation Schedule is established after the Court approves the annual trial grouping
schedule that is proposed by liaison counsel.  The deadlines contained within the Asbestos Litigation
Schedule are consistent with the deadlines set forth under §§ IV(C), V, and VI of this order.

<u>90 days before the projected jury selection</u> - Completion of all co-worker depositions.

<u>10 days before the date of the date-certain jury selection as scheduled by the Court pursuant to Section VIII.</u> -Defendants shall serve medical and expert liability reports.

## V. MOTIONS PROCEDURES

A. This section applies to all motions other than motions for summary judgment that are filed in the Asbestos Litigation Program. Motions for summary judgment shall be governed by Section VI.

B. All motions shall be electronically filed each Monday pursuant to Rule 205.4 of the Pennsylvania Rules of Civil Procedure and Rule *205.4 of the Philadelphia Civil Rules. Any motions filed after Monday will be deemed filed the following Monday.

C. All motions shall be in letter-brief rather than motion package format. The first page of the motion shall include the caption, type of litigation (i.e., Asbestos), name of opposing counsel, and the filing and response dates. The second page of the motion shall be the proposed order. The third page of the motion shall include the title line (Dear Judge"...) and contain an executive summary followed by questions presented, facts, and discussion of the issues with citation to pertinent legal authority. Each motion must also include a signed Certificate of Service.

D. All discovery motions also must include a signed Attorney Certification of Good Faith and Certificate of Service. The Attorney Certification of Good Faith shall attest that certifying counsel has spoken with opposing counsel to resolve the specific dispute at issue, and that despite counsel's good faith efforts, has been unable to do so. Merely sending an email or letter to opposing counsel without response does not constitute a good faith effort to resolve a discovery dispute.

E. The moving party must serve opposing counsel and all interested parties with a copy of every motion on the day filed with the Court, by electronic mail, facsimile or hand delivery [3].   The moving party shall notify opposing counsel and all interested parties of the motion Control Number upon notification of same by the Court.

F. From the date of filing as determined pursuant to Section V(B), opposing counsel shall have seven days to file a response to any motion, unless a specific Case Management Order provides otherwise.  The response must be filed no later than 11:59 p.m. of the due date.  THE RESPONSE MUST CLEARLY DISPLAY THE CONTROL NUMBER OF THE CORRESPONDING MOTION ON ITS FIRST PAGE.  The responding party must serve the moving party and all other interested parties with a copy of the response the same day by electronic mail, facsimile or hand delivery.  [4]

---

[3]  Counsel are reminded of the more exacting nature of the motions practice in the Complex Litigation Center because of the shorter response times and the need to ensure the completion of same-day service. Counsel are cautioned that under Rule 205.4(g)(2)(ii) of the Pennsylvania Rules of Civil Procedure, service by electronic transmission is not complete until "an e-mail message is sent to the recipient by the electronic filing system that the legal paper has been filed and is available for review on the system's website."  Accordingly, the obligation of same-day service contained Section V(E) of this order will not be satisfied by reliance on Rule 205.4 (g)(2) of the Pennsylvania Rules of Civil Procedure if a motion, response or reply filed by electronic mail is not accepted by the Court on the date that it is transmitted to the Court.

[4]  *See* Footnote 3, *supra*.

G. If any motion or response is withdrawn, filing counsel must electronically file, under the appropriate Control Number, a praecipe to withdraw. The praecipe must clearly display the Control Number of the motion. All interested parties must be served with a copy the same day by electronic mail, facsimile or hand delivery. [5]

H. Counsel shall not directly contact any mass tort law clerks or Complex Litigation Center staff requesting rulings on motions. Any questions should be sent to the Director of the Complex Litigation Center via e-mail at ComplexLitigationCenter@courts.phila.gov. No email correspondence or other ex parte communications should be sent to the judge.

## VI. SPECIAL PROCEDURES FOR MOTIONS FOR SUMMARY JUDGMENT

A. To prevent the filing of unnecessary motions, as set forth in the Asbestos Litigation Schedule, five days before the deadline for filing summary judgment motions (or 85 days before the projected jury selection date) plaintiffs' counsel are to serve upon all parties to a case, a letter identifying all defendants that plaintiff will voluntarily dismiss from that case.

B. All summary judgment motions shall be electronically filed 80 days before the projected trial date and shall comply with the requirements of Section V(C) *supra*.

C. Unless otherwise governed by Section VI(F), any opposing counsel shall file a response to the motion on or before 63 days before the jury selection date, as set forth in the Asbestos Litigation Schedule.

_____

[5] *See* Footnote 3, *supra*.

The response must be filed no later than 11:59 p.m. of the due date. The response must clearly display the control number of the corresponding motion on its first page. The responding party must serve the moving party and all other interested parties with a copy of the response the same day by electronic mail, facsimile or hand delivery. [6]

    D. A reply by the moving party, if any, shall be electronically filed by 11:59 PM on or before 58 days before the jury selection date, as set forth in the Asbestos Litigation Schedule. The reply must clearly display the control number of the corresponding motion on the first page. The reply must be filed no later than 11:59 p.m. of the due date. The party filing the reply must serve the moving party and all other interested parties with a copy of the reply the same day by electronic mail, facsimile or hand delivery. [7]

    E. Plaintiffs' counsel are under a good faith obligation to determine which of the defendants' motions will be opposed, and to cooperate with defense counsel in signing stipulations of dismissal where appropriate, so that defendants whose presence is not required at mediation are not put to the expense of attending mediation.

    F. If the plaintiffs' counsel would like the Court to hold a motion for summary judgment to allow for mediation, plaintiffs' counsel must notify the Court and all parties within 17 days of the filing of that summary judgment motion. By the same deadline, plaintiffs¿ counsel shall also advise the Court and all parties which summary judgment motions can be granted as unopposed.

_____

[6] *See* Footnote 3, *supra*.

[7] *See* Footnote 3, *supra*.

Plaintiff need not respond to any motion held in abeyance until the mediator has determined that the claim cannot be resolved before the Court renders a decision on the motion. Once the mediator makes this determination, the mediator shall give notice of the conclusion of the mediation process to the Court and to all parties by email, identifying those defendants who have had claims against them resolved and those against whom claims remain outstanding. Upon receiving notice from the mediator, the Director of the Complex Litigation Center, or their designee, shall then advise the plaintiffs they may file a response to any defendant's pending motion for summary judgment within seven days and defense replies shall be due no later than seven days after the filing of the response.

    G. Courtesy copies of motions should not be sent to the Complex Litigation Center or to the Court, unless specifically requested by the Court.

## VII. MEDIATION

    The Court expects all parties to fully cooperate with one another and to act in good faith to try to resolve pending actions. The Court strongly encourages parties to mediate their cases and to schedule mediation as soon as practicable. Cases that are ready to be mediated shall be scheduled for mediation to take place in the order of the trial groups as they appear on the projected trial lists and after the deadline for the filing of motions for summary judgment as established by this order and the Asbestos Litigation Schedule prepared on an annual basis. Plaintiffs' counsel shall provide the defendants with no less than 45 days' notice of a scheduled mediation. At the time of notice of the mediation, plaintiffs' counsel shall advise which defendants are expected to participate in the mediation and provide settlement demands.

The mediator shall set the deadlines for the timely submission of mediation statements. As cases are scheduled for mediation, plaintiffs' counsel shall notify the Director of the Complex Litigation Center by email with the names of the cases being mediated, the name of the mediator and the date of the mediation.

## VIII. SCHEDULING OF TRIALS AND DEADLINES

In any case that has not been resolved through mediation, the parties shall be prepared to proceed to a pre-trial conference to be conducted by the Team Leader Judge or their designee, which may take place approximately 30 days after the Court is notified of the failed mediation. If there are any outstanding motions ripe for review after mediation, the Court may rule on those motions before any pre-trial conference. If no pre-trial conference is held or if the matter does not resolve after any pre-trial conference, trial shall be scheduled to commence not less than 60 days after the mediator's notice that mediation has concluded. At that time, the Court will also schedule a date certain jury selection date or dates.

Plaintiffs shall make best efforts to comply with the deadlines established in the Asbestos Litigation Schedule for the production of plaintiffs' answers to interrogatories, bankruptcy trust filings, authorizations and expert reports. Defendants shall make best efforts to timely respond to discovery requests directed to them. The deadline for production of defense medical and liability reports shall be 10 days before the date of the date-certain jury selection.

One-week trial slots are established for each month of each year. There will be a primary case scheduled with designated "back-up" cases, which are expected to be ready to proceed to trial should the primary case settle. In the event the primary case settles, the first back-up will be substituted as the new primary case to be tried; this process shall be repeated until all back-up cases have been resolved. Counsel will be notified by the Court of the order of cases identified for trial and Notices of Trial Attachment will be served on counsel.

Within seven days of being assigned a trial date, as either the primary case or as a back-up case, all counsel and parties must notify the court of any scheduling conflicts, including trial attachments and pre-paid vacations, by electronically filing a conflict letter. The Court will not recognize any untimely conflict notifications. Failure to notify the Court of scheduling conflicts may result in the imposition of appropriate sanctions. To electronically file the conflict letter, access the "Existing Case" section of the court's electronic filing system, select "Conference Submissions" as the filing category, and select "Trial Pool Conflict Letter" as the document type. The assigned trial judge may serve additional orders or instructions on the parties proceeding to trial.

## IX. STIPULATIONS OF DISMISSAL

A. If a plaintiff has agreed to stipulate to the dismissal of a defendant, the defendant (the "Stipulated Defendant") shall prepare a stipulation of dismissal.

B. The Stipulated Defendant shall circulate the stipulation of dismissal to all defense counsel by letter, stating that any party has 10 days from the date of the letter to object to the dismissal of the Stipulated Defendant.

C. If a party objects to the dismissal of the Stipulated Defendant, the objecting party shall notify the Stipulated Defendant in writing stating the basis for the objection.

D. If, after the expiration of the 10-day period, no objections are received by the Stipulated Defendant, the stipulation of dismissal may be electronically filed with the Court as unopposed.

E. The electronically filed stipulation of dismissal must be accompanied by a cover letter stating no objections have been raised within the 10-day period.

F. Service of the Court-approved stipulation of dismissal shall be effectuated via the Court's electronic filing system on all parties of record.

G. Any defendant who settles with the plaintiff and desires to have the matter marked discontinued as to that defendant may follow this procedure or, in the alternative, file a motion as set forth in Rule 229(b) of the Pennsylvania Rules of Civil Procedure.

## X. DEADLINES FOR CASES THAT MOVE TO NEW TRIAL GROUPS

If any case is moved, with the consent of the Court, from its original projected trial group to a later projected trial group, all discovery and motions deadlines for the later projected group will apply.  Any summary judgment motions filed before moving the case will remain open and need not be re-filed.

## XI.  SANCTIONS

The Court expects all counsel to amicably resolve any issues that arise as a result of the implementation of this order.  The Court may make exceptions to any procedures or protocols set forth in this order in special situations, sua sponte or on written request, electronically filed with service upon all parties, of counsel upon showing extraordinary cause.

Failure to comply with any deadlines set forth in this Case Management Order may, upon application to the Court or after the issuance of a rule to show cause, result in the imposition of appropriate sanctions, including dismissal.

**BY THE COURT:**

**/s/**

_____
**JOSHUA ROBERTS**
**MASS TORT TEAM LEADER**